UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-08-07 |
| | § | |
| MARGARETTE McMAHAN, et. al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is the United States' Motion for Summary Judgment (Dkt. No. 28) wherein the Government seeks to reduce to judgment over $321,000 in income tax assessments made against Margarette S. McMahan ("Margarette") and the Estate of James K. McMahan (the "Estate") and to foreclose its federal tax liens against the real property made subject of this dispute.

## Factual & Procedural Background

On September 14, 2004, James K. McMahan ("James") died intestate in Goliad County, Texas, leaving Margarette as his sole surviving spouse. No probate proceedings were opened concerning James' estate.[1] James and Margarette (the "McMahans") also had two sons, Samuel S. and Timothy J., only the second of which purports to have any relevance to this action.[2]

Because of the McMahans' failure to pay income taxes for the years of 1993, 1994, and 1995, an Internal Revenue Service ("IRS") officer assessed against and gave notice and demand to the McMahans for unpaid taxes and related penalties, additions, and interest for such years. According to the Government's Form 4340/Certificate of Assessments, Payments and Other

---

[1] Dkt. No. 29, Ex. 9 at 10 (Response No. 10 to United States' First Request for Production of Documents).

[2] *Id.*, Ex. 2. Samuel McMahan executed a Disclaimer of Interest stating that he claims no interest in the property at issue in this suit and was accordingly dismissed from this action. Dkt. Nos. 8 & 10.

Specified Matters ("Form 4340"), the amount owed totaled $321,546.60 as of September 5, 2008.[3]

The Government claims that federal tax liens have arisen from these unpaid amounts and seeks to

foreclose its liens against two parcels of real property owned by Margarette, the real property located

at 1275 North Fort Street in Goliad County (the "Fort Street Property")[4] and the real property

identified in a 1985 warranty deed to James (the "Levi Miller Property").[5] James and Margarette,

through deeds dated and recorded in December 1990, purport to have conveyed both the Fort Street

and Levi Miller Properties to S&M Trust No. 1 (the "Trust").[6]

As grantors, James and Margarette received no consideration from the Trust for the

transferred properties, and the Trust was revocable in nature.[7] James and Margarette were designated

as the trustees of the Trust and the two had immensely broad powers as to the management and

allocation of its assets.[8]  Further indicative of the nature of the "conveyance," no lease agreement

exists between the Trust and either James or Margarette, Margarette continues to reside at the Fort

Street Property, and she pays no rent or other payment to the Trust for living there.[9] The Trust,

---

[3] Dkt. No. 29, Ex. 1.

[4] *Id.*, Ex. 3.

[5] *Id.*, Ex. 4.

[6] *Id.*, Ex. 7.

[7] *See id.*, Ex. 7 (stating that the McMahans, as grantors, reserve the power and right "(1) to reserve a beneficial life interest for ourselves; (2) the power to revoke, modify, or terminate the trust in whole or in part; (3) the power to designate the person to whom or on whose behalf the income or principal is to be paid or applied; (4) the power to control the administration of the trust in whole or in part; (5) the right to exercise a power or option over property in the trust or over interests made payable to the trust under an employee benefit plan, life insurance policy or otherwise; or (6) the power to add property, cause additional employee benefits, life insurance, or other interests to be made payable to the trust at any time."); Ex. 8 at 9 (Response No. 10 to United States' Request for Admission) (indicating no consideration was paid from the Trust to the McMahans); Ex. 9 at 10 (Response No. 15 to United States' First Request for Production of Documents) (same).

[8] *Id.*, Ex. 7.

[9] *Id.*, Ex. 9 at 10 (Responses No. 11 & 12 to United States' First Request for Production of Documents).

however, pays the property insurance, utilities, ad valorem taxes, and maintenance expenses on the

home located at the Fort Street Property.[10]

On November 13, 2000 and July 17, 2003, the Government recorded Notice of Federal Tax

Liens against James and Margarette in both the real and personal property records of Goliad County

for the years 1993, 1994, and 1995.[11] The Government also recorded a Notice of Federal Tax Lien

in the real property records of Goliad County against the Trust, as nominee, transferee, and/or alter

ego of James and Margarette on March 15, 2007 for the relevant income tax years.[12]

On January 5, 2007, an entity known as Country Manor Holdings purportedly loaned the

Trust $451,000 in exchange for a deed of trust conveying the Fort Street and Levi Miller Properties

(the "CMH Deed") to secure the loan. Although the CMH Deed was filed in Goliad County on

October 10, 2007, Margarette never received the $451,000 from Country Manor Holdings pursuant

to the deed of trust.[13]

Notably, the address listed for Country Manor Holdings on the CMH Deed—12 Carroll St.,

Suite 2013, Westminster, Maryland 21157—matches the address for the so-called "Save-A-Patriot

Fellowship" and its founder, John Baptist Kotmair. Through the Save-A-Patriot Fellowship, Mr.

Kotmair—himself a veteran tax protestor—sells products and services meant to enable its members

to avoid paying federal income taxes. Mr. Kotmair was also the subject of a recent suit initiated by

the United States, which eventually resulted in a Permanent Injunction Order entered in favor of the

---

[10] *Id.*, Ex. 10 at 10 (Response No. 6 to United States' First Set of Interrogatories).

[11] *Id.*, Ex. 5.

[12] *Id.*, Ex. 6.

[13] *Id.*, Ex. 11, Ex. 8 at 8 (Response No. 1 to United States' Request for Admission).

Government dated November 29, 2006.[14] The Order permanently enjoyed both Kotmair and the Save-A-Patriot Fellowship from, among other things, directly or indirectly "[o]bstructing or advising or assisting anyone to obstruct IRS examinations, collections, or other IRS proceedings."[15] Country Manor Holdings, moreover, is not registered to do business in either Texas or Maryland.

### Summary Judgment Standard

A summary judgment shall be issued if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998).  If the burden of proof at trial lies with the non-movant, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *Id.* at 323.

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047

---

[14] *United States v. Kotmair*, Case No. WMN-05-1297 (Nov. 29 2006); Dkt. No. 29, Ex. 13.

[15] *Id.*

(5th Cir. 1996). Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1995).  If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986).

## Discussion

### A. Initial Issues

Consistent with her prior filings in this matter, Margarette has lodged several baseless complaints concerning the Government's attempts to establish and foreclose upon the federal tax liens underlying this action, each of which the Court will address in turn. Despite Margarette's contentions to the contrary, it is well settled that under the Federal Rules of Evidence, a Form 4340 is valid evidence of a taxpayer's assessed liabilities, and courts presume the correctness of IRS determinations of taxes owed. *Perez v. United States*, 312 F.3d 191, 195 (5th Cir. 2002); *Stallard v. United States*, 12 F.3d 489, 493 (5th Cir. 1994); *Hughes v. United States*, 953 F.2d 531, 535, 539-40 (5th Cir. 1992); *Cummings v. Commissioner*, 410 F.2d 675, 679 (5th Cir. 1969); FED. R. EVID. 803(8), 902. Because a Form 4340 establishes a presumptively correct tax assessment and constitutes a prima facie case of liability on the part of the taxpayer, *Hughes*, 953 F.2d at 535, 539-40, a taxpayer bears the burden of showing the assessments were arbitrary or erroneous. *Bar L*

*Ranch, Inc. v. Phinney*, 426 F.2d 995, 998-99 (5th Cir. 1970). Margarette has completely failed to carry her burden. She has brought forth no competent evidence rebutting the propriety of the Government's tax assessments and thus they are accepted as correct.

Similarly, the fact that the Government's Form 4340 shows a "prompt assessment"—a "manually processed assessment of a secured return when collection appears to be at risk and the intention is to proceed with collection action immediately following the period for Notice and Demand," INTERNAL REVENUE MANUAL § 5.1.4.12 (2008)—does not invalidate the assessment. The Government's prompt assessment was made because of valid concerns regarding collection (the McMahans' blatant and continued attempts at unlawfully avoiding tax payment) and such efforts in no way prejudiced Margarette or the Estate. *See Dalin v. United States*, 62 Fed. Cl. 589, 601-02 (Fed. Cl. 2004). Moreover, and despite Margarette's assertions, Form 4340's do not record statutory accruals of interest or other additions until they are actually assessed. Form 4340's merely record assessments and payments and are only required to provide the taxpayer's identity, character of the liability assessed, taxable period and date, and amount of the assessment. TREAS. REG. § 301.6203-1; *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1989). The Government's summary judgment evidence has met these requirements and its assessments are proper.

Margarette also claims that the tax assessments were made outside of the applicable three year statute of limitations period mandated by section 1605 of the Internal Revenue Code. Her arguments are patently without merit. With respect to the tax year 1993, the McMahans filed their tax return on April 15, 1994. While the three year limitations period was initially set to expire on April 15, 1997, on January 29, 1997, the McMahans executed a Form 872, Consent to Extend the Time to Assess Tax, thereby extending by one year the time in which the Government could make

a timely assessment.[16] On December 11, 1997, the McMahans executed another Form 872, extending the Government's statutory time period to September 12, 1998.[17] Accordingly, the Government's May 26, 1998 assessment was well within the allowed statutory period. Concerning the tax year 1994, the McMahans filed their tax return on April 15, 1995 only to later execute a Form 872 on December 11, 1997, thereby extending the date for assessment to September 12, 1998.[18] The Government's May 26, 1998 assessment was thus timely. Finally, regarding the tax year 1995, the McMahans filed their tax return on April 15, 1996, thereby initiating a three year assessment period that would expire on April 15, 1999. The Government's 1998 assessment was obviously made within the applicable period.

Margarette also contends that the Government failed to deliver to her the appropriate notices of deficiency and related demands. Section 6303(a) of the Internal Revenue Code provides that: "The secretary or his delegate shall ... within 60 days after the making of an assessment of a tax pursuant to Section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof...." 26 U.S.C. § 6303(a). However, section 6303(a) is only "designed to protect taxpayers from the summary administrative powers of the IRS. Such protection is unnecessary when the government initiates a civil proceeding because the complaint gives the taxpayer notice that the government is proceeding against his property." *United States v. McCallum*, 970 F.2d 66, 69 (5th Cir. 1992). A failure to send the appropriate notices and demands, even if presumed, does not prevent the Government from brining a civil action like the one before the Court. *Id.*

---

[16] Dkt. No. 32, Ex. 1.

[17] Dkt. No. 29, Ex. 1.

[18] *Id.*

Moreover, section 6212 does not require the IRS to prove that a taxpayer received the notices, only that they were mailed to his "last known address." *See Jones v. United States*, 889 F.2d 1448, 1450 (5th Cir. 1989). The Government's Form 4340's establish that the appropriate notices *were* sent to the McMahans, which serves as presumptive proof that the notices were properly mailed. *Don Johnson Motors, Inc. v. United States*, 532 F. Supp. 2d 844, 859 (S.D. Tex. 2007) (citing *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir. 1991)). Margarette has proffered nothing to overcome this presumption. To the contrary, Margarette filed an appeal concerning the Government's nominee lien against the Trust, and after a review of the matter, IRS Appeals issued a closing letter dated May 8, 2007 deciding that the filing of the lien was proper.[19] This further supports the Court's finding that the Government sent the proper notices and demands and that they were duly received by the McMahans.

Finally, Margarette argues that she was not presented with the opportunity to petition the U.S. Tax Court as mandated by section 6213(a), which provides that within 90 days after a notice of deficiency is mailed, the taxpayer may file for a redetermination of the deficiency. However, given that the Court has found that the Government sent—and the McMahans received—the appropriate notices, Margarette had every right and opportunity to petition the Tax Court and may not now complain about failing to do so.

**B. An Automatic Lien Has Arisen Over the Defendants' Assets**

Title 26, United States Code, Section 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition

---

[19] Dkt. No. 32, Ex. 2.

thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. This lien automatically arises and "continues until the [tax] obligation is satisfied." *United States v. Jefferson-Pilot Life Ins. Co.*, 49 F.3d 1020, 1021 (4th Cir. 1995). However, a lien under section 6321 "is merely a security interest and does not involve immediate seizure" of the property and the Government must take further steps to recover on the tax deficiency. *See In re Sills*, 82 F.3d 111, 113-114 (5th Cir. 1996). Based on the above, it is clear that an automatic lien has arisen over the McMahans property as to over $321,000 in tax liability owed by the Defendants. In order to collect upon its lien, the Government must be able to reach and foreclose on the real property made the basis of this action.

**C. The Trust is a Sham, and Even it Were Valid, Its Nature as a Revocable Trust Makes it One to Which the Government's Federal Tax Lien Can Attach**

It is clear that trusts devoid of economic substance are considered "sham trusts" and are disregarded for federal tax purposes. Courts have looked to various factors when determining whether a trust is merely a sham, such as 1) whether the grantors themselves serve as trustees with powers so broad as to effectively allow them to allocate the entirety of the trust's assets and/or income to themselves; 2) whether the taxpayers have retained full use of the assets placed in trust; 3) whether the trust's assets have been used to pay personal expenses of the taxpayers; and 4) whether trust's assets have been distributed to the putative beneficiaries of the trust. *Itz v. United States*, Civ. No. A-83-CA-437, 1985 WL 1310, at *4 (W.D. Tex. Mar. 29, 1985). Here, each factor weighs in favor of finding that the Trust is merely a sham trust. The McMahans, as trustees, have nearly limitless powers which allow them to entirely cannibalize the Trust's assets; Margarette has retained full use of the Trust's assets; Margarette's personal expenses and those of her residence are paid out of the Trust; and there is no evidence that any trust assets have been distributed to the

9

supposed beneficiaries. Additionally, the Trust failed to provide the McMahans any consideration

for the Fort Street or Levi Miller Properties. Margarette has presented nothing to refute these

findings and the Court thus concludes that the Trust utterly lacks economic reality and should be

disregarded for tax purposes.[20]

Even assuming, *arguendo*, that the Trust is not a sham (or merely a nominee), the trust is

clearly revocable in nature allowing the Government to reach its assets to satisfy its federal tax lien.

It is clear and long-established that "a settlor cannot shield his assets by placing them in a revocable

trust for his own benefit." *United States v. Estabrook*, 78 F. Supp. 2d 558, 560-61(N.D. Tex. 1999)

(citing *Matter of Brooks*, 844 F.2d 258, 261 (5th Cir. 1988); *Matter of Johnson*, 724 F.2d 1138,

1140-41 (5th Cir. 1984); and *In re Witlin*, 640 F.2d 661, 663 (5th Cir. 1981)). "Where a person

creates a trust for his own benefit ... his ... creditors can reach the maximum amount which the

trustee under the terms of the trust could pay to him or apply for his benefit." *Id.* (citations and

quotations omitted). As in *Estabrook*, the McMahans created a revocable trust of which they were

grantors, trustees, and lifetime beneficiaries with overarching control and authority as to the

allocation and use of its assets. As Margarette herself aptly observed, "income tax-wise S&M Trust

No.1 being a Revocable Living Trust was the same as Margarette S. McMahan, individually, for

income tax purposes."[21] Presented with such facts, the Government clearly has the right and

authority to reach the Trust's assets to satisfy its federal tax lien.

---

[20] The Court notes that these findings also support the conclusion that Margarette and the Estate exercise complete control over the Trust's assets, the Trust is merely a nominee, and thus, the Trust's assets are properly construed as belonging to Margarette and the Estate for federal tax purposes. *In re Grothues*, 245 B.R. 828, 832 (W.D. 1999).

[21] Dkt. No. 29, Ex. 14.

**D. Other Persons or Entities Who Purport to Have an Interest in the Real Properties at Issue**

### 1. Timothy McMahan

In an Order dated May 13, 2008, the Court denied Margarette's attempt at substituting, as a real party in interest, her son Timothy. Dkt. No. 19. To the extent Margarette and the Estate have maintained, could be understood as continuing to maintain, or may later maintain that Timothy has any interest in the real property underlying this action, such contentions are wholly unavailing. The Fort Street Property was purchased by James and Margarette on March 30, 1962.[22] The Levi Miller Property was purchased by James on November 29, 1985.[23] Both properties were acquired while the McMahans were married, Margarette has not presented the Court with any evidence that either property was maintained as separate, and thus, they are deemed community property. *See* TEX. FAM. CODE ANN. §§ 3.002, 3.003. Because James died intestate, no probate proceeding was opened, and the surviving children were children of both parents, the community property passed directly to Margarette as surviving spouse. TEX. PROB. CODE ANN. § 45. Accordingly, Timothy has no interest in the real property made subject of this dispute.

### 2. Country Manor Holdings

As noted, Country Manor Holdings is purported to have loaned the Trust $451,000 in exchange for a Deed of Trust conveying an interest in the Fort Street and Levi Miller Properties. However, Margarette has admitted that she never received the loan, no mortgage payments have been made to Country Manor Holdings, and it is clear to the Court that Country Manor Holdings is merely a fictional duality of John Baptist Kotmair and the Save-A-Patriot Fellowship. As such, it has no interest in Margarette's properties. Moreover, even assuming the Court were to recognize or

---

[22] *Id.*, Ex. 3.

[23] *Id.*, Ex. 4.

give credence to Country Manor Holdings and its farcical "loan," the Deed of Trust—filed in Goliad County of October 10, 2007—is secondary and subordinate to the Government's federal tax liens, which were filed against James and Margarette in 2000 and 2003 and against the Trust on March 15, 2007. This transparently disingenuous effort at avoiding tax liability is characteristic of tax-protestor posture and will neither be given credence nor addressed further.

**E. The Government has the Authority to Immediately Foreclose on the Relevant Properties**

As stated above, Margarette is the sole owner of the Fort Street and Levi Miller Properties, against which a federal tax lien has arisen based on her failure to pay the Government's valid tax assessments in full after legally sufficient notice and demand. The Government has perfected its liens by filing the appropriate notices in both the real and personal property records of Goliad County. Title 26, United States Code, Section 7403(a) grants the Government the authority to "subject *any* property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability," even if the property can be considered homestead pursuant to Texas law. 26 U.S.C. § 7403(a) (emphasis added); *United States v. Rodgers*, 461 U.S. 677, 690-94 (1983). Margarette has failed to set forth convincing rationale or support opposing immediate foreclosure. Accordingly, the Court concludes that the Government  is entitled to foreclose on its federal tax lien, sell the Fort Street and Levi Miller Properties in accordance with 28 U.S.C. § 2001, *et seq.*, and apply the proceeds from the sale to Margarette and the Estate's federal tax debt. *See* 26 U.S.C. § 7403(c).

**Conclusion**

The United States has shown that Margarette and the Estate are liable to the Government for federal income taxes assessed against them for the 1993, 1994, and 1995 tax years, plus interest and

statutory additions. The United States has shown that a valid lien exists on Defendants' properties.

The Defendants have failed to show that a fact issue exists regarding their tax liability or the validity

of the tax liens on the real property at issue. Based on the foregoing, the United States' Motion for

Summary Judgment (Dkt. No. 28) is **GRANTED**.

It is so **ORDERED**.

**SIGNED** this 3rd day of December, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE